## Case No. 8,035.

LAMSON v. WESTCOTT et al.

[1 Sumn. 591.] [1]

District Court, D. Massachusetts. Jan. 14, 1831. [2]

SEAMEN — LIABILITY OF VESSEL FOR MEDICAL ATTENDANCE.

[Expenses incurred for board, physician's attendance and medicine for a sick seaman, who voluntarily goes ashore to be treated for yellow fever, cannot be deducted from that seaman's wages. The maritime law makes these chargeable to the ship, and this is not changed by statute.]

[Cited in The Forest, Case No. 4,936; Richardson v. The Juillette, Id. 11,784; Howe v. The Lexington, Id. 6,767a; The Leonidas, Id. 8,262; Knox v. The Ninetta, Id. 7,912; Ringgold v. Crocker, Id. 11,843; The North America, Id. 10,314.]

[This was a libel by William Lamson against Joseph Westcott and others for the recovery of wages.]

Benjamin R. Nichols, for libellant.
C. P. Curtis, for respondents.

DAVIS, District Judge. This suit is for the recovery of wages, alleged to be due to the libellant as mate of the brig George, Daniel Dennison, late master, in a voyage from Boston to St. Jago in the Island of Cuba, and back to the United States, of which vessel the respondents are owners. The voyage was duly performed by the libellant, and there is no dispute, as to the earning of the wages demanded; but the respondents contend, that the amount of wages is exceeded by what they consider their rightful demand, which they introduce as a set-off, being the amount paid, at St. Jago, by their agent for expenses incurred by the libellant's sickness at that place. Those expenses are for his

| | | |
|---|---|---|
| Board, fifteen days | $30 | 00 |
| Washing | 1 | 00 |
| Apothecary's bill | 13 | 25 |
| Doctor's bill | 25 | 00 |
| Four bottles of Madeira wine | 5 | 50 |
| | $74 | 75 |

The vessel was furnished with a medicine-chest, with directions, pursuant to the requirements of the act of congress, for the government and regulation of seamen in the merchants' service, passed July 20, 1790 [1 Stat. 131], extended to the West India trade by the act of March 2d, 1805 [2 Stat. 330], by which, it is contended, the master and owners are exempted from the charge of medicine, and medical advice and assistance; and as to the considerations, which,

in ordinary cases, exempt a sick seaman on shore from the other expenses specified in the account, it is argued, that they are not applicable to this case. At the time when the libellant was put on shore, the vessel was about proceeding to another port, in the Island of Cuba, to take in part of her cargo, under the command of the libellant, Captain Dennison having died, the day before, of the yellow fever. The libellant was at that time ill, with symptoms of the same disorder. He, however, got the vessel under way; but, from his increasing illness, and the urgent advice of the pilot, he decided on going on shore, considering it the most prudent step to be taken, not only for his own relief, but for the safety of the crew. He took with him, from the medicine-chest, such articles as were thought best adapted to his case. The vessel departed, under the charge of the pilot, and it was expected she would return in about a week. She did not return, however, until fourteen days had elapsed from the time of her departure, when the libellant had so far recovered, that he resumed his station on board the vessel, returning to the United States under the command of another person. It is said, in reference to this state of facts, that the libellant caused himself to be put on shore unnecessarily; that he was unreasonably alarmed at his situation; that it is doubtful whether he had the yellow fever; and that there were circumstances, known to the libellant, from which he might reasonably have inferred, that Captain Dennison, if he died of the yellow fever, did not receive the disorder in the ordinary way of contagion, but that his disorder was introduced by a too free indulgence in the use of ardent spirits. In regard to the last mentioned particular, the conduct of the libellant, in circumstances appearing in evidence, manifests a decision of character, and a prudent regard to the best interest of his employers, which should go far to shield him from the charge of precipitation, or timidity, or of indifference to the duties of his station. The captain's sickness, however, excited and inflamed by the causes suggested, was undoubtedly a case of yellow fever. That the libellant was seized with the same alarming disorder, appears altogether probable, not only from his own apprehensions, but from the decided opinion expressed by the pilot, who accompanied his pressing advice to the libellant to leave the vessel, with intimations of the most alarming character, as to his fate, if he should continue on board. Under these circumstances, I cannot but think the libellant's conduct justifiable. It is further urged, that, admitting the leaving of the vessel to have been justifiable, the libellant succeeding to the command after the death of Captain Dennison involves all the incidents of that station, and that, whatever may be the claims of a seaman, as to the expenses of sickness, they cannot be

---

[1] [Reported by Charles Sumner, Esq.]
[2] [Affirmed in Case No. 5,329.]

maintained by a master. This position cannot, I think, be maintained on legal or reasonable grounds. Whatever the libellant was entitled to as mate, is not lost or extinguished by his duties as master of the vessel, afterwards casually superinduced by the death of the original master. The libellant, if he had acted as commander for the whole residue of the voyage, after the death of Captain Dennison, would still have a right to sue in admiralty for his wages, as mate for the whole voyage; taking some other proper remedy for any increased compensation for his services as master. We have a decided case to this purpose in Robinson's Admiralty Reports [2 C. Rob. Adm. 232]; and the principles, on which that decision proceeded, would secure to him the privileges he might be entitled to in his capacity as mate, and, among the rest, whatever exemption he might claim in that capacity from the expenses of sickness in the course of the voyage. In this view I shall consider his case, and it remains to inquire, whether he be bound to sustain the bill of charges, which the owners of the vessel have paid for his sickness at St. Jago, under the circumstances which have been stated. By the rules and principles of maritime law, as existing independent of the statute of the United States, which has been mentioned, he would not be thus liable; but such expenses would fall on the owners. There may have been doubts formerly, and probably such doubts existed when that statute was framed, as to the liabilities in such cases, and whether some portion, at least, should not be borne by the seaman. Some of the old codes, usually resorted to, as guides in such questions, would seem to favor such apportionment. There are other regulations, however, on this subject, more modern and better adapted to the present times, which in express terms direct, that a seaman falling sick shall be cured at the expense of the ship; and this is decidedly declared to be the rule of law on the subject by the circuit court in Maine, in the case of Harden v. Gordon [Case No. 6,047], with such modifications and exceptions only as the act of congress, which I have mentioned, has established. The terms of the statute are, that the vessel "shall be provided with a chest of medicines, put up by some apothecary of known reputation, and accompanied by directions for administering the same; and the said medicines shall be examined by the same, or some other apothecary, once at least in every year, and supplied with fresh medicines in the place of such as shall have been used or spoiled; and in default of having such medicine-chest, so provided and kept for use, the master or commander of such ship or vessel shall provide for and pay for all just advice, medicine, or attendance of physicians, as any of the crew shall stand in need of in case of sickness, at every port or place where the ship or vessel may touch or trade at during the voyage, without any deduction from the wages of such seamen or mariner." The application of this act to the various cases occurring, has, as Mr. Justice Story observes, been attended with no little embarrassment and perplexity, to the minds of those judges who have been called to decide on the questions which have arisen. Their difficulties are happily in a great degree relieved by his elaborate and able opinion in that instructive case. The points therein expressly decided go far to settle this case. In the first place, whatever may be the operation of the statute, as to advice, medicine, and attendance of physicians, it is determined, that the other charges of sickness are unaffected by its provisions; and, in regard to medicines, it is held, that the provision manifestly contemplates, that the sick seaman is on board the ship, or in a situation to command the use of the medicine-chest and directions; "and that it cannot therefore be intended to apply to cases, where the seaman is removed on shore, and is deprived of these benefits. To him the non-existence of the medicine-chest, and the incapacity to obtain the use of it, are precisely equivalent. Whenever, therefore, the sick seaman is removed ashore for the convenience of the ship, whether with his own consent or without it, if he does not draw his medicines from the chest, he is entitled to an allowance equal to his expenditure for medicines." These principles, thus distinctly and emphatically announced, are clearly applicable to the case in question, and, yielding to their authority, as well as to my conviction of their reasonableness and solidity, I cannot but reject the respondents' charges for board and washing, and for the medicine included in the account. Under the head of medicine, I consider the Madeira wine, that was furnished, to be comprehended.

It remains to determine, by which party the physician's bill shall be sustained. It does not appear by the report of the case of Harden v. Gordon [supra], whether a physician's bill were included in the demand. If it were, and were disallowed, we must infer, that it would have been distinctly noticed, with reasons assigned for its disallowance, especially as its kindred charge, (medicine,) is expressly sustained. I am, therefore, to proceed, in this particular, without the valuable and desirable precedent, of which I should have had the benefit, if an opinion on the physician's bill had been given in that case. I have endeavored to give to the subject every just attention, and to adopt such an interpretation of the statute, that it may, according to the approved rules of law, have a reasonable effect, agreeably to the intent of the legislature. The act charges the master, and through him, it is conceived, the owner of the deficient vessel, with the whole amount incurred for advice, medicine, and attendance of physicians at every port or

place, where the ship or vessel may touch or trade during the voyage, without any deduction from the wages of the sick seaman, or mariner, in default of having on board, so provided and kept fit for use, a medicine-chest, with accompanying directions, pursuant to the provisions of the statute. It is not expressed, that he shall be free from all such charge in case of compliance with that injunction. But it is obviously implied, that an allowance and benefit of this description must have been intended, either by way of inducement, if the owner were considered before liable to such charges by the general maritime law, or as a penalty, if he were viewed by the legislature as not thus liable, by the general law on the subject. Unless this be admitted, the law would be without sanction. Cases, however, may be readily supposed, which would not be within the true meaning and intent of the law, though coming within its terms. In reference to the object of the law, we must suppose, as is remarked by the learned judges, who have commented upon it, that a benefit to the seaman was intended to be conferred. The requisition, it is believed, is peculiar to our country, and it certainly is of estimable value. Our seamen, doubtless, often find relief and comfort from the execution of its requirements, when at sea, especially in long voyages. Still they would pay too dearly for such accommodations, if, in every case requiring medical aid, in port, often in very unhealthy climates, the whole expense of such aid, excepting what was derived from the medicine-chest and directions, should be deducted from their hard earnings. The regulation is, in my opinion, limited to the ordinary cases of illness on board the ship, a sickness of such a character, that the patient may be and is kept on board, and receives, or may receive, the benefit of the medicine-chest, and the directions, and the advice and assistance of the master of the ship, or some other competent person attached to the ship, in the application of the medical directions accompanying the chest, and such nursing and attendance, as the situation of the ship may admit. When the circumstances of the case, and especially the hazard arising from a malignant and contagious disorder, render it necessary or expedient to put the patient on shore, not merely for his greater benefit, but for the general interest of the voyage, there is presented a case, which is not within the fair meaning of the statute, and must be governed by the general principles of maritime law, applicable to the circumstances of the case. There is a class of cases, that might be mentioned, coming within the general aspect of the law, and yet not within its fair intent. Such are the cases requiring surgical skill and assistance, a dislocation or a fracture, in which the medicine-chest and its directions, with all the assistance and intelligence of the master or of any one belonging to the ship, would

be of no avail. Such disasters are not unfrequent in the various manoeuvres on board a ship. That the unfortunate subject of them shall be cured at the expense of the ship is expressly provided in all the marine codes, old and new, and in a distinct article from the provisions respecting seamen falling sick. It may be reasonably doubted, whether it was intended to repeal the general law on this subject, in such a contingency, by the provision respecting a medicine-chest, from which, the nature of the case supposed, the sufferer could have no relief. This supposition, however, is introduced merely by way of illustration. It is not the case before me, and, of course, what has been said on that head is to be taken with all the reserve, that will leave the mind free to proceed in another direction, when an actual case of this description shall be brought before the court, and be properly discussed and considered. The line which I should draw on this subject is, that the operation of the act, as to the sick seaman's liability to expenses of medicine and medical advice and assistance, is specially applicable to sickness on board the ship, and is not applicable to the cases, in which the sick seaman is put on shore; especially when such disposition of the patient is induced from hazard to the rest of the crew, if he should remain on board, or from other motives having reference to the general interest of the voyage, or, as Mr. Justice Story expresses it, for the convenience of the ship. The circumstances of this case bring it, in my opinion, within the range of this qualification. I am not prepared to say, what should be the result, where the removal of the patient is merely for his benefit or comfort, without any apparent motive of reasonable urgency in reference to the general interest or convenience of the ship. I include the physician's bill, because it is obviously the intent of the act, that the sick seaman should have medical aid, as well as medicines; for this purpose the apothecary's directions are required; and it is doubtless to be understood, though not expressed, that the patient, in their use and application, is to have some assistance. The sick seaman cannot do this himself. A duty of this description, (and a delicate and difficult one it often must be,) necessarily belongs to the captain. It may often be inadequate, but it is what the law provides; and in most instances, probably, the health of the crew is well preserved under these regulations, especially as the arrangement must naturally prompt to a degree of attention to the subject, on the part of the master, which might not be exercised if cases of sickness were to be devolved upon physicians and nurses. The master is to be the physician in such case; the ship is the hospital; and if the patient be removed to another hospital or habitation on shore, without medicine and without a physician, which he is, when not

accompanied by the medicine-chest, the directions, and the master or some competent person to apply the directions and medicines to his case, the want is to be supplied in the best manner that circumstances will admit. The sick seaman is not to sustain the expense of the substitution for what the law has provided he should have on board the ship free of expense, it being always understood that the patient is without fault, meaning by this intimation such fault or culpability in incurring disease, that the law places the extra expense to his account.

Decree, $54.50 and costs, being the amount of wages, without deduction on account of expenses paid by the respondents, as exhibited by their account.

[The owners appealed from this decree to the circuit court, which affirmed the decree, with cost. The George, Case No. 5,329.]