## Case No. 11,784.

### RICHARDSON v. The JUILLETTE.

[2 N. Y. Leg. Obs. 23.]

District Court, S. D. New York. Oct. 5, 1842.

SEAMEN—SUIT FOR INJURY SUSTAINED—EXPENSES —PROVISION MADE BY VESSEL.

Where a seaman received an injury on board a vessel, resulting from the freezing of his feet, and amputation of his toes, and when the vessel arrived in Norfolk he was, with the consent of the captain, placed in a hospital, where he received proper support and medical attendance, but left before he was entirely cured, and it appeared that when he left the wounds were fast healing, and he was told by the physician attending him that his foot should be kept still until it was perfectly recovered, and the libelant, disregarding the advice of the physician, came to the city of New York, and was obliged immediately afterwards to employ a surgeon to dress the wound, and still continued to so do, and he incurred large expenses for board, and he sought to recover all disbursements and liabilities incurred since he left the hospital, and also the worth of the care and treatment as if provided by himself during the period he was in the hospital, and compensation by way of damages for the loss of time and general debility, superinduced by the injury received, and it appeared, by the evidence of the physician who attended him, that if the seaman had remained at the hospital the wound would have entirely healed, held, that such suit could not be sustained.

In admiralty.

Nash & Noble, for libelant.
Mr. Bushnell, for respondent.

BETTS, District Judge. This action seeks a remedy against the vessel for expenses incurred by the libelant in consequence of an injury received whilst serving as mariner on board. The injury was a serious one, resulting from the freezing of the libelant's feet on a winter voyage, and the consequent amputation of his toes. The wounds are not yet entirely healed, and the libelant remains a cripple, unable to resume his employment as a seaman. When the vessel arrived at Norfolk, immediately after the injury, the captain, with consent of the libelant, had him placed in the hospital, where he received all proper support and medical attendance for a period of seven or eight months, and was subsequently brought without expense to the public hospital at Staten Island, where he was further taken charge of, and was well provided for, both as to surgical treatment and his personal wants and comforts. He remained there from Sept. 30th, 1841, to July 13th, 1842, and then left before he was entirely cured. The attending physician testifies the wounds were at the time fast healing, but that quiet was indispensable to their entire cure, and that he charged the libelant to keep his foot still, and not use it until perfectly recovered. He thinks, had the libelant remained at the hospital, the wound would have been entirely healed before this time. The libelant came to the city, and was obliged immediately afterwards to employ a surgeon, and continues the dressings still. He also incurred large expenses for board. He now seeks to recover all disbursements and liabilities incurred since he left the hospital, and also contends that the worth of the cure and treatment, as if provided by himself, is to be allowed him during the period he was in the hospital, and that he is furthermore entitled to compensation by way of damages for the loss of time and general debility superinduced by the injury he received.

The maritime law, in securing seamen the right of resort to the ship for expenses incurred in being cured of diseases or injuries sustained in service of the ship, supplies a rule of indemnity only. Laws Oleron, art. 6; 7 Hanse Towns, art. 39; 45 Wisbury, arts. 18, 19; Jacobson, 144. It affords no ground for a claim against the ship for compensation in

gross to cover expenses that may accrue consequentially from the injury, and much less to render the sailor an equivalent for loss of time, or his personal disablement, except possibly in the case of wounds or capture in defending the ship. Consolato del Mar. c. 182; Hans. Laws, 35; Cleirac's Sea Laws. The strict right is, for the sailor to remain with the ship, and be there nursed and supplied with needed medical assistance, and it has been made a serious question whether, if the vessel is furnished with medical stores in conformity with the act of congress [2 Stat. 192], a seaman can, under any exigency, leave her at his own election, and demand the expenses of his support and treatment elsewhere. 2 Megan, 541; The George [Case No. 5,329], 1 Sumn. 591; Pierce v. Patton [Case No. 11,145]; Holmes v. Hutchinson [Id. 6,639]; Walton v. The Neptune [Id. 17,135]. If, however, the master assents to his going on shore, the cases hold the vessel not exonerated from the expense of his cure, although there might have been sufficient provision on board in that behalf. The George [supra]. But it is equally clear that if the sailor will leave the vessel so furnished, without the consent of the master, he cannot, as matter of right, impose the expenses he may thus incur on the ship.

These principles, in indicating the relative rights of owner and seaman, furnish also the rule by which the present case must be determined. The libelant left the vessel by consent of the master, and was placed in a public hospital, and this, in relation to any ulterior claim against the vessel, must be of the same effect, against him, as if quarters and medical attendance had been secured him on shore, at the charge of the master alone. In the latter case it could not be successfully contended that the sailor could have the option to leave such provision and select his own accommodations, and still charge the expense upon the vessel. He would be required to adhere to the arrangement, and to abide by the provision on shore, so long as it was continued him, and was sufficient and proper in itself as a substitute for the vessel. The same reason applies to hospitals. He went there of his own accord. The provisions for his comfort and cure were incomparably superior there to what could be furnished him on board the ship, and having made the election, and the master having assented to it, the sailor, in all justice, should be bound to continue in that situation as long as it was freely furnished him.

It is not necessary to say that masters may of right compel seamen to leave their vessels and go into hospitals, but I have no difficulty in holding that this course, particularly in the United States, being so greatly to their advantage and comfort every way, if voluntarily assented to on their part, will be both approved and upheld by the court. Every consideration of humanity and public policy in respect to this class of men commends most strongly their being placed, when sick or wounded, in our hospitals, in preference to being kept on shipboard, or trusted to their own discretion on shore. The libelant, in this case, of his own accord, and against the advice of the attending physician, left the hospital, where he had the privilege of remaining, and I do not think there is any color of law or equity to support his claim against the vessel now for disbursements which would have all been spared him, had he continued to use the privileges provided him. Public policy would induce the court to discourage seamen leaving the hospitals under like circumstances, and, without some stern rule of law interposed to support an action of this description, I should be wholly indisposed to give it countenance. Libel dismissed, but without costs.